EISNER, A Professional Corporation
JEREMIAH T. REYNOLDS (SBN 223554)
jreynolds@eisnerlaw.com
RYAN D. AUSTIN (SBN 288066)
raustin@eisnerlaw.com
9601 Wilshire Boulevard, 7th Floor
Beverly Hills, California 90210
Telephone: 310.855.3200
Facsimile: 310.855.3201

Attorneys for Defendants, Counter-
Claimants and Third-Party Plaintiffs
Voltage Pictures, LLC, Voltage
Productions, LLC, Christchurch
Productions DAC, Nicolas Chartier, and
Definition Films DAC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| FARHAD SAFINIA,  an individual,<br><br>        Plaintiff and Counter-<br>        Claim Defendant.<br><br>    vs.<br><br>VOLTAGE PICTURES, LLC, a<br>California limited liability company;<br>VOLTAGE PRODUCTIONS, LLC, a<br>Nevada limited liability company;<br>CHRISTCHURCH PRODUCTIONS<br>DAC, an Ireland designated activity<br>company; NICOLAS CHARTIER, an<br>individual; and DOES 1 through 100,<br>inclusive,<br><br>        Defendants and Counter-<br>        Claim Plaintiffs. | Case No. 2:17-cv-06902-CBM-RAO<br>Assigned to: Hon. Consuelo B. Marshall<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Discovery cut-off: August 30, 2018<br>Pre-trial conference: March 26, 2019<br>Trial date: April 30, 2019<br><br>Hearing Date:  November 13, 2018<br>Hearing Time: 10:00 a.m.<br>Courtroom:     First Street Courthouse<br>               350 W. 1st Street<br>               Courtroom # 8B, 8th Fl.<br>               Los Angeles, CA 90012 |
| RELATED COUNTER CLAIMS | Complaint Filed:  September 19, 2017 |

**E I S N E R**

9601 WILSHIRE BOULEVARD, 7TH FLOOR
BEVERLY HILLS, CALIFORNIA  90210

1    **TO ALL INTERESTED PARTIES AND THEIR ATTORNEYS OF**

2    **RECORD:**

3    **PLEASE TAKE NOTICE** that on November 13, 2018 at 10:00 a.m., or as

4    soon thereafter as counsel may be heard in Courtroom #8B in the United States

5    District Court for the Central District of California, located at 350 W. 1st Street, Los

6    Angeles, California, 90012, the Honorable Consuelo B. Marshall presiding,

7    Defendants Voltage Pictures, LLC, Voltage Productions, LLC, Christchurch

8    Productions DAC, and Nicolas Chartier (collectively, "Defendants") will move for

9    summary judgment on Plaintiff Farhad Safinia's Claim for Copyright Infringement

10   on the grounds that he has no standing to assert such a claim because the Certificate

11   of Authorship he signed clearly and unambiguously provides that he would have no

12   ownership interest in any scripts he prepared in connection with the "Professor and

13   the Madman."

14       In addition, and even if the Certificate of Authorship somehow did not apply

15   to bar Plaintiff's claim, Plaintiff's claim should be dismissed because: (1) there is no

16   independent copyright in Plaintiff's September 14, 2016 script ("9/14/16 Script")

17   because it fails to meet the criteria for independent copyright protection in a

18   derivative work; (2) Plaintiff's copyright infringement claim fundamentally fails

19   because Plaintiff is improperly asserting that he is the sole owner of the entire

20   9/14/16 Script, not just the very minor changes he made from prior scripts which he

21   does not own; (3) Plaintiff cannot sue his joint author for copyright infringement as

22   a matter of law; (4) Defendants had an implied license to exploit the 9/14/16 Script;

23   and (5) there is no evidence to show that any of the Defendants copied any of

24   constituent elements of the 9/14/16 script that are original or copyrightable into the

25   Picture.

26       This Motion for Summary Judgment will be based on this Notice, the attached

27   Memorandum of Points and Authorities in Support thereof, the Declarations of Ryan

28   D. Austin and Nicolas Chartier and the exhibits attached thereto, the pleadings and

1  papers on file in this action, and on such further evidence and argument that the

2  Court may receive at or before the hearing.

3      This Motion is made following the conference of counsel pursuant to L.R. 7-3

4  which took place on October 9, 2018.

5  DATED:  October 16, 2018      EISNER, APC

6

7                                    By:  _____ */s/ Jeremiah T. Reynolds* _____

8                                         Jeremiah T. Reynolds
                                          Ryan D. Austin
9                                         Attorneys for Defendants, Counter-
10                                        Claimants and Third-Party Plaintiffs
                                          Voltage Pictures, LLC, Voltage
11                                        Productions, LLC, Christchurch
                                          Productions DAC, Nicolas Chartier, and
12                                        Definition Films DAC

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EISNER**
9601 WILSHIRE BOULEVARD, 7TH FLOOR
BEVERLY HILLS, CALIFORNIA 90210

# **TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................. 8

II.  STATEMENT OF FACTS .................................................................... 9

   A.   Plaintiff signs the Certificate of Authorship with Airborne. ................ 9

   B.   Voltage is engaged to produce the Picture. ........................................ 11

   C.   Plaintiff works on reducing the length of the script ........................... 12

   D.   Definition acquires all of Icon's and Airborne's rights in the
        Book and Scripts ................................................................................. 14

   E.   Plaintiff files his Complaint and attempts to enjoin the Picture. .......... 15

III. THE COURT SHOULD DISMISS PLAINTIFF'S CLAIM BECAUSE
     HE SIGNED A CERTIFICATE OF AUTHORSHIP RELINQUISHING
     HIS OWNERSHIP RIGHTS ................................................................ 16

IV.  THE COURT SHOULD DISMISS PLAINTIFF'S COPYRIGHT
     INFRINGEMENT CLAIM BECAUSE HE HAS NO VALID
     COPYRIGHT IN THE 9/14/16 SCRIPT. .............................................. 20

   A.   Safinia cannot base a copyright infringement claim on a revision
        of a preexisting script that he does not own. .................................... 20

        i.   Plaintiff cannot satisfy the first element of the *Durham* test. .......... 21

        ii.  Plaintiff cannot satisfy the second element of the *Durham* test. ........ 23

   B.   Plaintiff's claim should be dismissed because he has improperly
        claimed ownership of the entire 9/14/16 Script. ............................... 23

   C.   Plaintiff cannot sue the Joint Authors of the 9/14/16 Script for
        copyright infringement ........................................................................ 25

   D.   Defendants have an implied license to utilize the 9/14/16 Script ......... 26

   E.   There Is No Evidence that Any of the Defendants Copied the
        9/14/16 Script .................................................................................... 28

V.   CONCLUSION .................................................................................... 29

E I S N E R

9601 WILSHIRE BOULEVARD, 7TH FLOOR
BEVERLY HILLS, CALIFORNIA  90210

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

716535

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*ABS Entertainment, Inc. v. CBS Corporation*,
  900 F.3d 1113 (9th Cir. 2018) ....................................................................21, 23

*Antonick v. Elec. Arts, Inc.*,
  841 F.3d 1062 (9th Cir. 2016) ....................................................................28, 29

*Asset Marketing Systems, Inc. v. Gagnon*,
  542 F.3d 748 (9th Cir. 2008) ......................................................................26, 27

*Campbell v. Acuff-Rose Music, Inc.*,
  510 U.S. 569 (1994) ...........................................................................................21

*Casa Herrera, Inc. v. Beydoun*,
  32 Cal.4th 336 (2004) ........................................................................................19

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) .....................................................................................16, 17

*Cooling Systers and Flexibles, Inc. v. Stuart Radiator, Inc.*,
  777 F.2d 485 (9th Cir. 1985) (overruled on other grounds)...............................24

*The DBT Group v. FMC Corp.*,
  No. 01-C-2769, 2001 WL 1105077 (N.D. Ill. Sept. 19, 2001) ...........................24

*DeliverMed Holdings, LLC v. Schaltenbrand*,
  734 F.3d 616 (7th Cir. 2013) .............................................................................24

*Durham Indus. v. Tomy Corp.*,
  630 F.2d 905 (2d Cir. 1980) .......................................................................21, 23

*Effects Assocs., Inc. v. Cohen*,
  908 F.2d 555 (9th Cir. 1990) ......................................................................26, 27

*Entm't Research Grp., Inc. v. Genesis Creative Grp., Inc.*,
  122 F.3d 1211 (9th Cir. 1997) ...............................................................21, 22, 23

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
  499 U.S. 340 (1991) ...........................................................................................28

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

716535

**E I S N E R**
9601 WILSHIRE BOULEVARD, 7ᵀᴴ FLOOR
BEVERLY HILLS, CALIFORNIA  90210

*Garcia v. Google Inc.*,
   786 F.3d 733 (9th Cir. 2015) (en banc) ................................................ 22

*Gold Value Int'l Textile, Inc. v. Sanctuary Clothing, LLC*,
   No. LA CV16-00339, 2017 WL 2903180 (C.D. Cal. Mar. 24, 2017) ................ 24

*I.A.E., Inc. v. Shaver*,
   74 F.3d 768 (7th Cir. 1996) ............................................................ 23, 28

*Jules Jordan Video, Inc. v. 144942 Canada Inc.*,
   617 F.3d 1146 (9th Cir. 2010) .......................................................... 18

*Lamps Plus, Inc. v. Seattle Lighting Fixture Co.*,
   345 F.3d 1140 (9th Cir. 2003) .......................................................... 17

*Mostowfi v. i2 Telecom Int'l, Inc.*,
   269 F. App'x 621 (9th Cir. 2008) ...................................................... 17

*N. Coast Indus. v. Jason Maxwell, Inc.*,
   972 F.2d 1031 (9th Cir. 1992) .......................................................... 22

*Oddo v. Ries*,
   743 F.2d 630 (9th Cir. 1984) ........................................................ 25, 26

*Richmond v. Weiner*,
   353 F.2d 41 (9th Cir. 1965) ............................................................ 25

*Riverisland Cold Storage, Inc. v. Fresno-Madera Production Credit
   Assn.*,
   55 Cal.4th 1169 (2013) ................................................................ 19

*Sony Pictures Ent., Inc. v. Fireworks Ent. Group, Inc.*,
   156 F. Supp. 2d 1148 (C.D. Cal. 2001) ................................................ 17

*Stewart v. Abend*,
   495 U.S. 207 (1990) .................................................................... 24

*Sybersound Records, Inc. v. UAV Corp.*,
   517 F.3d 1137 (9th Cir. 2008) .......................................................... 26

*Three Boys Music Corp. v. Bolton*,
   212 F.3d 477 (9th Cir. 2000) ........................................................... 28

*Urantia Found. v. Maaherra*,
   114 F.3d 955 (9th Cir. 1997) ........................................................... 24

**EISNER**

9601 WILSHIRE BOULEVARD, 7TH FLOOR
BEVERLY HILLS, CALIFORNIA  90210

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

*Warren v. Fox Family Worldwide, Inc.*,
   328 F.3d 1136 (9th Cir. 2003) ............................................................... 17

*Wells Fargo Bank v. Marshall*,
   20 Cal.App.4th 447 (1993) ................................................................... 19

**Statutes**

17 U.S.C. § 101 ........................................................................................ 17, 21

17 U.S.C. § 101(a) ......................................................................................... 25

17 U.S.C. § 103(b) ......................................................................................... 24

17 U.S.C. §§ 106, *et seq* .............................................................................. 15

17 U.S.C. § 201(a) ......................................................................................... 17

Cal. Civil Code §§ 45, 45a............................................................................. 15

Fed. R. Civ. P. 56(c) ................................................................................ 16, 17

United States Copyright Act .................................................................... *Passim*

**E I S N E R**
9601 WILSHIRE BOULEVARD, 7ᵀᴴ FLOOR
BEVERLY HILLS, CALIFORNIA 90210

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff Farhad Safinia has no standing to assert a claim for copyright infringement of a September 14, 2016 script ("9/14/16 Script") for the motion picture entitled "Professor and The Madman" (the "Picture").  In 2007, Plaintiff signed a broad "Certificate of Authorship" ("COA") in which he clearly and unambiguously agreed that all of the "writings" and work he performed related to the Picture would constitute "work made for hire" under the Copyright Act, and that he would have no ownership interest whatsoever in any script he prepared in connection with the Picture.  Nonetheless, after already failing to obtain a TRO, Plaintiff persisted in prosecuting this unfounded copyright infringement case by contending that the COA applied only to a "single rewrite" of the script, but not all of his subsequent work.

No such limitation appears anywhere in the terms of the COA or anywhere else, and in fact, the COA's plain language states the opposite.  It unambiguously provides that it applies to all work Plaintiff performed on the screenplays for the Picture, not just a single rewrite.  Nor is there a shed of admissible extrinsic evidence that would support Plaintiff's "single rewrite" interpretation of the COA.  Both Plaintiff and the counterparty to the COA, Airborne Productions, Inc., testified that they could not recall any discussions of the COA before it was signed. Thus, the Court should dismiss Plaintiff's copyright claim because he has no standing and no ownership interest whatsoever in the 9/14/16 Script.

Even if the COA somehow did not apply to bar Plaintiff's claim (it does), there are several additional independent grounds that require dismissal of Plaintiff's copyright infringement claim.  First, there is no independent copyright in the 9/14/16 Script because it fails to meet the criteria for independent copyright protection in a derivative work.  Plaintiff concedes he does not own the rights to

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

716535

E I S N E R
9601 WILSHIRE BOULEVARD, 7TH FLOOR
BEVERLY HILLS, CALIFORNIA 90210

Book upon which the 9/14/16 Script is based, nor any of the previous scripts that he revised, and Plaintiff's minor changes contained in the 9/14/16 Script do not qualify for copyright protection in the Ninth Circuit.

Second, Plaintiff's copyright infringement claim fails because Plaintiff is improperly asserting that he is the sole owner of the ***entire 9/14/16 Script***, not just the very minor changes he made from prior scripts which he does not own.

Third, even if independent derivative work copyright protection did somehow exist in the 9/14/16 Script, as a matter of black letter law, Plaintiff cannot sue his joint author for copyright infringement.

Fourth, every objective fact demonstrates that Defendants had an implied license to exploit the 9/14/16 Script in a motion picture.  By granting Defendants an implied license, Plaintiff waived his right to sue them for copyright infringement.

Fifth, Plaintiff has been unable to produce any evidence that any of the Defendants copied any portion of the 9/14/16 Script into a motion picture, let alone copied any portion of the 9/14/16 Script's minor changes that is original to and owned by Plaintiff.  The motion picture that allegedly infringes Plaintiff's 9/14/16 Script is not even part of the record in this case, and no comparison can be done to determine whether it infringes the 9/14/16 Script.

Accordingly, Plaintiff's claim for copyright infringement should be dismissed for all of foregoing independent reasons.

## II.     STATEMENT OF FACTS

### A.     Plaintiff signs the Certificate of Authorship with Airborne.

In approximately 2003, Plaintiff was hired as a full-time employee by Icon Productions, LLC ("Icon") in the position of Mel Gibson's assistant.  (SUF 1.) Approximately six months after being hired by Icon, Plaintiff's duties at Icon expanded to also working as a screenwriter.  (SUF 2.)

Plaintiff was asked by Icon to work on a script based on the book entitled, "The Professor and the Madman: A Tale of Murder, Insanity, and the Making of the

E I S N E R

9601 WILSHIRE BOULEVARD, 7ᵀᴴ FLOOR
BEVERLY HILLS, CALIFORNIA  90210

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Oxford English Dictionary" (the "Book"), which Icon was attempting to develop into a motion picture ("Picture").  (SUF 3.)  Icon had hired two previous writers, John Boorman and Todd Kormanicki, to write drafts of the script, but Mr. Gibson believed those drafts were not ready to be made into a film.  (SUF 4.)

Before beginning work on the scripts, Plaintiff was asked by Vicki Christianson, President of Icon and President of Airborne Productions, Inc. ("Airborne"), to sign a Certificate of Authorship ("COA") with Airborne providing (*inter alia*) that "all writings" he created in connection with his work on the script would constitute "works made for hire" for Airborne under the Copyright Act.[1] (SUF 5.)  The COA indicates it was signed on January 8, 2007 by Plaintiff and Ms. Christianson on behalf of Airborne.  (SUF 9.)  Neither Plaintiff nor Ms. Christianson could recall **any discussions** they had concerning the COA before it was signed by Plaintiff.  (SUF 10.)

The terms of the COA are written broadly to prevent Plaintiff from claiming **any ownership interest** in any script(s) he prepared in connection with the Picture:

> I, Farhad Safinia, hereby certify that I have been engaged by Airborne Productions, Inc. ('Company') to render writing services in connection with the **pre-existing script** entitled 'The Professor and the Madman' **based on the book** of the same name (the 'Project').  In connection therewith, I hereby represent, warrant and agree that (a) my services are rendered for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged; (b) the results and product of all such services, including, without limitation, **all writings, notes, ideas, characters, situations, themes and plots I contribute** in connection with the Project, (collectively,  the 'Work') are and will be deemed to have been **specifically ordered or commissioned by Company for use as part of a motion picture** or other audio visual work; (c) such results and product are and will be a **'work made for hire'** within the meaning of the United States Copyright Act; and (d)

---

[1] Airborne is a "below-the-line production company" used by Icon "to isolate liability" on films.  (SUF 6.)  Airborne is owned by the same owners of Icon –50% by Mel Gibson's living trust and 50% by Bruce Davey either individually or through one of Mr. Davey's entities.  (SUF 7.)  The COA was prepared by Icon's in-house attorney, David Miercort.  (SUF 8.)

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

EISNER

9601 WILSHIRE BOULEVARD, 7TH FLOOR
BEVERLY HILLS, CALIFORNIA 90210

> **Company shall be deemed to be the author** thereof and the owner of **all rights therein and of all proceeds derived therefrom** and in connection therewith, **with the right to make such changes therein and such uses and disposition thereof**, in whole or in part, as Company may from time to time determine as the author and owner thereof.

(SUF 11 (emphases added).)  The COA is not limited to a particular script or version authored by Plaintiff.  Instead, it applies to "**all writings**, notes, ideas, characters, situations, themes and plots **[Plaintiff] contribute[s] in connection with the Project**, (collectively, the 'Work')," and it provides that all such Work "are and will be deemed to have been **specifically ordered or commissioned by Company for use as part of a motion picture** or other audio visual work."[2]  (SUF 12 (emphases added).)

Plaintiff testified that after signing the COA, he could not remember the date he began actual work on the script, but estimated that it was sometime in 2007 while he was working at Icon.  (SUF 14.)  It took Plaintiff several months to produce a first draft, which utilized portions of the script that had been written by the prior writers, Messrs. Boorman and Kormanicki.  (SUF 15.)  Plaintiff showed his draft to Mr. Gibson, who liked it, and Plaintiff continued to work on the script until 2009 when he left employment with Icon. (SUF 16, 17.)

**B.  Voltage is engaged to produce the Picture.**

In or around 2014, Voltage Productions, LLC ("Voltage Productions") became interested in potentially producing the Picture.  (SUF 18.)  Icon sent Voltage a 136-page script for the Picture that listed Plaintiff as the writer, and was dated January 25, 2015 ("1/25/15 Script").  (SUF 19.)  The 1/25/15 Script was the script

---

[2] As a matter of precaution, the COA also goes on to state that "[t]o the extent the Work is not deemed transferred to or owned by Company by operation of law or otherwise, I hereby assign and transfer to Company all rights in and to the Work, **including the copyright therein**." (SUF 13 (emphasis added).)

EISNER

9601 WILSHIRE BOULEVARD, 7TH FLOOR
BEVERLY HILLS, CALIFORNIA 90210

Plaintiff prepared while working at Icon.  (SUF 20.)  Plaintiff acknowledges that he has no ownership interest in the 1/25/15 Script.  (SUF 21.)

Effective March 12, 2015, Voltage Productions, on the one hand, and Icon, on the other hand, entered into a deal memorandum ("Deal Memorandum") whereby Voltage Productions was engaged to exclusively submit the "Property," defined as "[t]he proposed motion picture entitled 'The Professor and the Madman' (the 'Picture') based on the screenplay by Farhad Safinia, which is based on the book by Simon Winchester," to potential lead actors for the role of Dr. William Minor, as well as to produce and arrange financing of the production of the Picture.  (SUF 22.) The Deal Memorandum indicates that Plaintiff would serve as director and that Voltage would enter into a separate agreement with him.  (SUF 23.)

In or around May 2016, Sean Penn agreed that he was interested in playing the lead role of Dr. William Minor and later came to an agreement in July 2016 on his acting services.  (SUF 24.)  Icon approved of Mr. Penn in this role.  (SUF 25.) Voltage Productions and Icon also agreed Voltage Productions would arrange for full financing for the Picture through its affiliates.  (SUF 26.)

## C.     Plaintiff works on reducing the length of the script.

In or around August 2016, Zev Foreman, who was then President of Production for Voltage Pictures, LLC ("Voltage Pictures"), began negotiating with Plaintiff's agent, Danny Greenberg, and lawyer, Warren Dern, regarding the terms of a directing agreement as well as a writing agreement.  On August 23, 2016, Mr. Foreman made a written offer to Mr. Dern to pay Plaintiff a total of $200,000 for his directing services and for performing a polish on the script.  (SUF 27.)

Plaintiff travelled to Dublin, Ireland in August 2016 to begin performing services and to prepare for principal photography on the Picture.  (SUF 28.)  Prior to production beginning, Voltage requested that Plaintiff shorten the length of the 1/25/15 Script.  (SUF 29.)  On August 20, 2016, Plaintiff sent Zev Foreman a revised version of the script ("8/20/16 Script") with a cover email stating that "the

overall page count is 4 pages less than before at 131 [pages]."[3]  (SUF 30.)  Plaintiff later produced another version of the script, dated September 14, 2016 ("9/14/16 Script"), that further reduced the page count from 131 pages to 125 pages.[4]  (SUF 31.)

Plaintiff's changes to the 1/25/15 Script and 8/20/16 Script did not affect the look or feel of the Picture.  They merely changed the look of the script.  "Redline" comparisons between the 1/25/15 and 9/14/16 Scripts and between the 8/20/16 and 9/14/16 Scripts reveal that Plaintiff's changes are non-substantive and overwhelmingly consist only of formatting changes such as edits to punctuation, capitalization of words, playing with quotation marks, and fixing typographical errors.  (SUF 34.)  Plaintiff cut down certain portions of the script.  However, such cuts were insubstantial and focused primarily on paring down excessively wordy scene direction and condensing contractions, rather than substantive reductions in dialogue or scene length.  (SUF 35.)

Even Plaintiff's changes to the content of the Picture were minor.  He occasionally edited words in a passage of dialogue, but the changes generally did little, if anything, to alter the meaning or feel of the script.  (SUF 36.)  Sometimes, for example, Plaintiff simply eliminated gratuitous words.  (*Id*.)  Other times, he made subtle adjustments to his word choice.  (*Id.*)  Plaintiff's character modifications were similarly minor, and included cutting dialogue from only nameless characters and assigning names to characters previously referred to by a description, or vice versa.  (*Id.*)  Plaintiff did not cut or add any scenes, nor did Plaintiff's changes include any new or even noticeably rewritten dialogue passages.

---

[3] Plaintiff did not register a copyright in the 8/20/16 Script and makes no claim for infringement based on the 8/20/16 Script.

[4] Plaintiff ultimately used a version of the script, dated September 30, 2016 ("9/30/16 Script"), to direct the Picture.  (SUF 32.)  Plaintiff could not describe the differences between the 9/14/16 Script and the 9/30/16 Script at his deposition, but they do not appear to be anything other than formatting. (SUF 33.)

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

EISNER
9601 WILSHIRE BOULEVARD, 7TH FLOOR
BEVERLY HILLS, CALIFORNIA 90210

Rather, the plot and every scene in the 9/14/16 Script flowed in the same way it had in the 1/25/15 and 8/20/16 Scripts, and every character made the same points in their dialogue.  (SUF 39.)

### D.   Definition acquires all of Icon's and Airborne's rights in the Book and Scripts.

While Plaintiff was working on the scripts, Icon/Airborne and Voltage were working on finalizing agreements that would transfer to Definition all of Icon's and Airborne's rights in the Book and Scripts prepared by Plaintiff.  On September 29, 2016, counsel for Icon provided the signature of Airborne on a "Quitclaim Agreement," which assigned all of Airborne's "right, title and interest in and to the Picture" to Definition ("Airborne Quitclaim").  (SUF 38.)  In the Airborne Quitclaim, Airborne represented and warranted that it had underlying rights in both the Book and the screenplays based on the Book that had been revised by Plaintiff. (SUF 39.)  The Airborne Quitclaim specifically states that Airborne is assigning "[a]ll rights in and to the book entitled 'The Professor and the Madman' written by Simon Winchester ('Winchester'), and **all rights in and to** *all drafts and versions* **of the screenplay** currently entitled 'The Professor And The Madman' written by Farhad Safinia ('Safinia') and/or any other writer (based on the foregoing book) (collectively, the 'Literary Material')."  (SUF 40 (emphasis added).)

In addition, the Airborne Quitclaim specifically provides that Airborne is assigning "Certificate of Authorship dated January 8, 2007, between Airborne Productions, Inc. ('Airborne') and Safinia wherein Safinia certifies that he was engaged by Airborne 'to render writing services in connection with the pre-existing script entitled "The Professor and the Madman" based on a book of the same name' on a work for hire basis."  (SUF 40, 41.)

Mr. Foreman followed up with Plaintiff's attorney, Mr. Dern, on September 27, 2016, inquiring about the offer for writing and directing services, and noting that shooting was set to begin on Friday, September 30, 2016.  (SUF 42.)  Mr. Dern

EISNER

9601 WILSHIRE BOULEVARD, 7TH FLOOR
BEVERLY HILLS, CALIFORNIA 90210

finally responded on September 28, 2016 stating that Plaintiff wanted a fee of $275,000.  (SUF 43.)  Mr. Foreman immediately responded the same day, stating "We are a bit late to get into that now. I've been very clear about what we could do and about different options.  I only have 200 for him. thats it."  (SUF 44.)  Mr. Dern responded, stating "Hmmmmm.  Okay.  We will chat on our end."  (SUF 45.)

On September 30, 2016, principal photography on the Picture began in Ireland with Plaintiff serving as the director of the Picture.  (SUF 46.)  Plaintiff's expenses were paid by the production for his work in Ireland, totaling the sum of $56,816, consisting of the following expenses: Airfare - $8,875; Airport pickups - $793; Assistant/driver - $21,101; Accommodations - $18,328; Trailer - $3,070; Per diem expenses - $4,649.  (SUF 47.)

On November 21, 2016, Defendant Christchurch Productions DAC ("Christchurch"), the local production company in Ireland involved with producing the Picture, paid the sum of $17,818 to Plaintiff for his writing polish fee care of his agents at William Morris Endeavor ("WME").  (SUF 48.)  In addition, on November 21, 2016, Christchurch paid Plaintiff the sum of $163,963.80 through his agents at WME, representing the amount for directing services due to him upon delivery of his first cut of the Picture.  (SUF 49.)

**E.     Plaintiff files his Complaint and attempts to enjoin the Picture.**

On September 19, 2017, Plaintiff filed his Complaint against Defendants asserting the following two causes of action: (1) copyright infringement, pursuant to 17 U.S.C. §§ 106, *et seq*; and (2) defamation (libel) per se, pursuant to Cal. Civil Code §§ 45, 45a.  (ECF No. 1.)[5]  The next day, Plaintiff also filed his *Ex Parte* Application for a Temporary Restraining Order and Order to Show Cause re Preliminary Injunction ("Application"), seeking an injunction preventing Defendants from "copying, circulating, displaying, distributing, or transferring" any

---

[5] Plaintiff's defamation claim was later dismissed by the Court for lack of subject matter jurisdiction.  (*See* ECF No. 41.)

E I S N E R

9601 WILSHIRE BOULEVARD, 7TH FLOOR
BEVERLY HILLS, CALIFORNIA  90210

motion picture based upon the 9/14/16 Script.  (ECF No. 6.)  Plaintiff submitted a declaration in support of his Application in which he stated:

> In August and September 2016, I wrote an authorized screenplay adaptation of Mr. Winchester's book (the '2016 Screenplay'). Attached hereto as **Exhibit A** is a true and correct copy of the 2016 Screenplay. I have since registered the 2016 Screenplay as a derivative work with the United States Copyright Office. Attached hereto as **Exhibit B** is a true and correct copy of the Certificate of Registration, No. PAu003847498, of the 2016 Screenplay.

(ECF No. 6-2 at ¶ 4.).  Attached as Exhibit A to his declaration is the 9/14/16 Script. (*Id.*)

Defendants opposed the Application on several grounds, including that Plaintiff had signed the COA relinquishing all of his rights in any scripts he prepared in connection with the Book.  (ECF No. 12.)  On September 22, 2017, the Court denied Plaintiff's Application on the grounds that, *inter alia*, Plaintiff failed to show likelihood of success on the merits and stated:

> Defendant submits evidence that Plaintiff signed a 'work made for hire' agreement, transferring his rights to the screenplay to a third-party production company affiliated with Defendants."   (Declaration of Nicolas Chartier ('Chartier Decl.') ¶¶ 6, 8, Exs. E, F.)  In 'work made for hire' agreements, 'the employer or other person for whom the work was prepared is considered the author . . . and . . . owns all the rights in the copyright.' *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1140 (9th Cir. 2003) (citing 17 U.S.C. 201(b)). ***Thus, Plaintiff fails to demonstrate ownership of a valid copyright.***

(ECF No. 14 at p. 2 (emphasis added).)

## III.   THE COURT SHOULD DISMISS PLAINTIFF'S CLAIM BECAUSE HE SIGNED A CERTIFICATE OF AUTHORSHIP RELINQUISHING HIS OWNERSHIP RIGHTS.

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  "The burden on

E I S N E R

9601 WILSHIRE BOULEVARD, 7TH FLOOR
BEVERLY HILLS, CALIFORNIA  90210

the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.  "Once the moving party satisfies this initial burden, 'an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings. . . . The adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial." . . . The mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient; there must be evidence on which a reasonable jury could reasonably find for the plaintiff." *Sony Pictures Ent., Inc. v. Fireworks Ent. Group, Inc.*, 156 F. Supp. 2d 1148, 1152 (C.D. Cal. 2001) ("Rule 56 requires entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").

Under the Copyright Act, the party claiming infringement bears the burden of demonstrating ownership.  *See Lamps Plus, Inc. v. Seattle Lighting Fixture Co.*, 345 F.3d 1140, 1144 (9th Cir. 2003) ("Ownership of the copyright is … always a threshold question."  (quoting *Topolos v. Caldewey*, 698 F.2d 991, 994 (9th Cir. 1983))).

Copyright ownership vests in the author of a work.  17 U.S.C. § 201(a). "However, if the work is made for hire, 'the employer or other person for whom the work was prepared is considered the author ..., and… owns all the rights in the copyright." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1140 (9th Cir. 2003) (quoting 17 U.S.C. § 201(b)).  A work for hire is "a work specially ordered or commissioned for use as … as a part of a motion picture … if the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire."  17 U.S.C. § 101.  "The creator of a work made for hire does not have a legal or beneficial interest in the copyright and therefore does not have standing to sue for infringement." *Mostowfi v. i2 Telecom Int'l, Inc.*, 269 F. App'x 621, 623 (9th Cir. 2008).

1    Plaintiff's claim for copyright infringements fails for numerous reasons, but
2    the most glaring reason is that Plaintiff agreed in the COA that "all writings" he
3    contributed in connection with the Project would be a "work made for hire" within
4    the meaning of the United States Copyright Act.  (SUF 9, 11, 12.)  The COA is not
5    limited to a particular script or version authored by Plaintiff.  Instead, Plaintiff
6    agreed that it applies to "**all writings**, notes, ideas, characters, situations, themes and
7    plots **I contribute in connection with the Project**, (collectively,  the 'Work')," and
8    it provides that **all such writings** "are and will be deemed to have been **specifically**
9    **ordered or commissioned by Company for use as part of a motion picture** or
10   other audio visual work."  (SUF 11, 12 (emphases added).)  Accordingly, the COA
11   plainly establishes that **all** of Plaintiff's writings contributed in connection with
12   "The Professor and the Madman" are works made for hire, and copyright in those
13   writings vests in Airborne, which has now assigned those rights to Definition.  (SUF
14   11, 12, 13, 38-41.)

15   "Copyrights, like any other property right, can be transferred by any means of
16   conveyance." *Jules Jordan Video, Inc. v. 144942 Canada Inc.*, 617 F.3d 1146, 1156
17   (9th Cir. 2010) (citing 17 U.S.C. § 201(d)(1)).  Accordingly, and as a matter of
18   precaution, the COA also goes on to state that "[t]o the extent the Work is not
19   deemed transferred to or owned by Company by operation of law or otherwise, I
20   hereby **assign and transfer** to Company **all rights** in and to the Work, **including**
21   **the copyright therein**."  (SUF 13.)  Thus, on its face, the COA bars Plaintiff from
22   claiming any ownership interest in the 9/14/16 Script for the independent reasons
23   that (1) it was a "work made for hire" within the meaning of the United States
24   Copyright Act and (2) Plaintiff transferred any ownership interest in any or all of his
25   Scripts to Airborne by way of conveyance.  (SUF 11, 12, 13, 38-41.)

26   Nonetheless, Plaintiff has claimed earlier in this proceeding that the COA
27   does not actually mean what it says, but somehow applies only to a "single rewrite"
28   of the script he prepared back in 2007.  (*See e.g.* ECF No. 29, p. 18.)  The parol

EISNER
9601 WILSHIRE BOULEVARD, 7TH FLOOR
BEVERLY HILLS, CALIFORNIA  90210

-18-

evidence rule prohibits Plaintiff from attempting to ascribe a meaning to the COA to which it is not reasonably susceptible. *Wells Fargo Bank v. Marshall*, 20 Cal.App.4th 447, 453 (1993); *Casa Herrera, Inc. v. Beydoun*, 32 Cal.4th 336, 343 (2004).

> "Although the parol evidence rule results in the exclusion of evidence, it is not a rule of evidence but one of substantive law. [Citation.] It is founded on the principle that when the parties put all the terms of their agreement in writing, the writing itself becomes the agreement. The written terms supersede statements made during the negotiations. Extrinsic evidence of the agreement's terms is thus irrelevant, and cannot be relied upon. [Citation.] '[T]he parol evidence rule, unlike the statute of frauds, does not merely serve an evidentiary purpose; it determines the enforceable and incontrovertible terms of an integrated written agreement.' [Citations.] The purpose of the rule is to ensure that the parties' final understanding, deliberately expressed in writing, is not subject to change. [Citation.]"

*Riverisland Cold Storage, Inc. v. Fresno-Madera Production Credit Assn.*, 55 Cal.4th 1169, 1174 (2013) (citations omitted).

There is no provision of the COA that could be reasonably interpreted to suggest it applies only to a "single rewrite." To the contrary, every provision was deliberately drafted to prevent Plaintiff from making such a claim. Plaintiff is simply trying to belatedly rewrite the terms of the COA to match his litigation position. Under such circumstances, the parol evidence bars Plaintiff from submitting extrinsic evidence to alter or vary the COA. *See Riverisland*, 55 Cal. 4th at 1174.

But even *assuming arguendo* that the parol evidence rule somehow did not apply to bar the admission of extrinsic evidence (it does), Plaintiff has not been able to produce **any admissible evidence** whatsoever suggesting that the COA was intended to apply only to a single rewrite. Neither Plaintiff nor anyone associated with Airborne could recall any negotiation or discussion of the COA before it was signed. (SUF 10.) Airborne clearly believed the COA applied to all of Plaintiff's

scripts, not just a single draft, because the Airborne Quitclaim between Airborne and Definition specifically references the COA and states that Airborne is assigning all "right, title and interest in "the screenplay currently entitled 'The Professor and the Madman' written by Farhad Safinia, and/or any other writer, and **all drafts, versions,** synopses, treatments, scenarios, screenplays, and all copyrights in connection herewith" to Definition.  (SUF 38 (emphasis added).)  Thus, Airborne assigned its interest in "all drafts, versions, etc." of the screenplay prepared by Plaintiff, not just drafts that had been prepared at or around the time the COA was executed by Plaintiff in 2007.  And "all drafts" would include any drafts that were prepared by Plaintiff in or around August or September 2016.

As such, the Court should find that the COA bars Plaintiff from bringing a copyright infringement claim against the Defendants because Plaintiff has no ownership interest in any scripts he prepared in connection with "The Professor and the Madman."

## IV.   THE COURT SHOULD DISMISS PLAINTIFF'S COPYRIGHT INFRINGMENT CLAIM BECAUSE HE HAS NO VALID COPYRIGHT IN THE 9/14/16 SCRIPT.

For the reasons above, Plaintiff should not be entitled to claim a copyright interest in the 9/14/16 Script because he signed the COA, which transferred all of his ownership interest to Airborne, which in turn assigned the COA and all of Plaintiff's scripts to Definition via the Airborne Quitclaim.  (SUF 9, 11-13, 38-41.)  But even assuming *arguendo* that the COA somehow did not apply to bar Plaintiff's copyright claim (it does), there are nonetheless five separate and additional independent grounds that all require dismissal of Plaintiff's copyright claim.

### A.   Plaintiff cannot base a copyright infringement claim on a revision of a preexisting script that he does not own.

A derivative work is defined by the Copyright Act as one "based upon one or more preexisting works" that "recast[s], transform[s], or adapt[s]" the preexisting

E I S N E R

9601 WILSHIRE BOULEVARD, 7TH FLOOR
BEVERLY HILLS, CALIFORNIA  90210

work.  17 U.S.C. § 101; *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 574 n.4 (1994).  "A derivative work is copyrightable when it meets two criteria: (1) 'the original aspects of a derivative work must be more than trivial,' and (2) 'the original aspects of a derivative work must reflect the degree to which it relies on preexisting material and must not in any way affect the scope of any copyright protection in that preexisting material.'" *ABS Entertainment, Inc. v. CBS Corporation*, 900 F.3d 1113, 1113 (9th Cir. 2018) (quoting *U.S. Auto Parts Net., Inc. v. Parts Geek, LLC*, 692 F.3d 1009, 1014 (9th Cir. 2012) *citing Durham Indus. v. Tomy Corp.*, 630 F.2d 905, 909 (2d Cir. 1980).)  "This is known as the *Durham* test . . . . [T]he second prong ensures that the derivative work author does not hinder the original copyright owner's ability to exercise all of its rights." *Id.*

It is not enough for a change in the derivative work to simply be noticeable to the naked eye.  Instead, the changes to the derivative work must be its "defining aspect."  *See Entm't Research Grp., Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211, 1224 (9th Cir. 1997).  In *Entm't Research*, ERG claimed to own a copyright in inflatable costumes that it designed and manufactured based on the defendant's copyrighted cartoon characters.  122 F.3d at 1215.  In determining that the costumes were not independently copyrightable, the Ninth Circuit held that "no reasonable trier of fact would see anything but the underlying copyrighted character when looking at [the] costumes."  *Id.* at 1223.  The court held that the different facial expressions, proportions, and functional capabilities were "clearly not **the defining aspect[s]** of the costumes" when viewed "in the context of the overall costume" and, thus, were not considered distinguishable variations capable of supporting independent copyright protection.  *Id.* at 1224 (emphasis added).

### i.      Plaintiff cannot satisfy the first element of the *Durham* test.

It is undisputed that the 9/14/16 Script is both a derivative work of the Book, which Plaintiff does not own, and a derivative work of prior scripts that Plaintiff does not own.  The Court should not allow Plaintiff to claim independent copyright

E I S N E R

9601 WILSHIRE BOULEVARD, 7TH FLOOR
BEVERLY HILLS, CALIFORNIA  90210

E I S N E R

9601 WILSHIRE BOULEVARD, 7ᵀᴴ FLOOR
BEVERLY HILLS, CALIFORNIA 90210

1   protection in the 9/14/16 Script because it contains only minor changes from the

2   prior versions of the script.  (SUF 34-37.)  Certainly, the changes Plaintiff made to

3   the 9/14/16 Script cannot be said to be "so crucial to the derivative work" that "a

4   reasonable trier of fact" "would find the derivative works to be recognizably the

5   derivative creator's own product."  *Entm't Research.*, 122 F.3d at 1224

6   (distinguishing *N. Coast Indus. v. Jason Maxwell, Inc.*, 972 F.2d 1031 (9th Cir.

7   1992)).  All of the main elements, such as characters, scenes, plot sequences, etc. are

8   virtually identical to prior versions.  Thus, the "defining aspect" of the 9/14/16

9   Script is still the underlying expression – characters, dialogue, plot sequences, etc.

10   — that came from the Book and earlier drafts of the script that Plaintiff does not

11   own.  *See id.*

12        The Ninth Circuit has previously stated that Congress did not intend for the

13   creation of "thousands of standalone copyrights' in a given work.  *Garcia v. Google*

14   *Inc.*, 786 F.3d 733, 736 (9th Cir. 2015) (en banc) (citing *Aalmuhammed v. Lee*, 202

15   F.3d 1227 (9th Cir. 2000)).  As noted by the court in *Garcia*,

16        In *Aalmuhammed*, we concluded that defining a 'work' based upon
        'some minimal level of creativity or originality ... would be too broad
17        and indeterminate to be useful.' [Footnote; Citation.]  Our animating
        concern was that this definition of "work" would fragment copyright
18        protection for the unitary film *Malcolm X* into many little pieces:

19

20        So many people might qualify as an "author" if the question
            were limited to whether they made a substantial creative
21            contribution that that test would not distinguish one from
            another. Everyone from the producer and director to casting
22            director, costumer, hairstylist, and "best boy" gets listed in the
            movie credits because all of their creative contributions really do
23            matter.

24

25   *Garcia*, 786 F.3d at 742.

26        This same concern in *Garcia* is present in this case.  Scripts often go through

27   hundreds of revisions but not every revision to a script is worthy of independent

28   copyright protection.  Plaintiff should not be able to claim a new copyright in simply

a condensed version of prior scripts he does not own.  Thus, the Court should find that Plaintiff has failed to satisfy the first requirement of the *Durham* test for establishing copyright protection in a derivative work.

### ii.   Plaintiff cannot satisfy the second element of the *Durham* test.

The second element of the Durham test prevents a plaintiff from "hinder[ing] the original copyright owner's ability to exercise all of its rights."  *ABS Entertainment*, 900 F.3d at 1122-23.  In *Entm't Research*, the court applied the second element of the *Durham* test in refusing to recognize a derivative work copyright.  122 F.3d at 1224.  The court found that providing such a copyright to plaintiff ERG would give it "a de facto monopoly on all inflatable costumes depicting the copyrighted characters also in ERG's costumes" because of the similarity between ERG's costumes and the underlying characters.  *Id.*

Here, even if Plaintiff could satisfy the first requirement of the *Durham* test, the second element is clearly not met because Plaintiff is attempting to prevent the copyright owner, Definition, from making a motion picture that is a derivative work of the original copyrights – *i.e.*, the Book and underlying scripts, which Definition owns.  The minor changes that Plaintiff made in the 9/14/16 Script should not give Plaintiff a "de facto monopoly" to prevent Defendants from making **a derivative version of their own copyrights**.  As such, the Court should find that Plaintiff has failed to satisfy the second element of the *Durham* test and has no derivative copyright in the 9/14/16 Script.

### B.   Plaintiff's claim should be dismissed because he has improperly claimed ownership of the entire 9/14/16 Script.

Even if Plaintiff could somehow demonstrate a copyright in the 9/14/16 Script as a derivative work (he cannot) by satisfying the *Durham* test, his copyright claim still fails as a matter of law because Plaintiff has improperly claimed in his Complaint, his Copyright Registration, and in sworn deposition testimony to be the copyright owner of the **entire 9/14/16 Script**.  (*See* SUF 51, ECF No. 1, ¶ 27;

E I S N E R

9601 WILSHIRE BOULEVARD, 7TH FLOOR
BEVERLY HILLS, CALIFORNIA  90210

Austin Decl. ¶ 2, Ex. A ("Safinia Tr.") at 214:13-20.)  But at very best, Plaintiff could only claim ownership of the minor changes he made to the 9/14/16 Script from prior versions, because "[t]he copyright in a ... derivative work **extends only to the material contributed by the author of such work**, as distinguished from the preexisting material employed in the work, and does not imply any exclusive right in the preexisting material." 17 U.S.C. § 103(b) (emphasis added); *Stewart v. Abend*, 495 U.S. 207, 222-25 (1990) (owner of a derivative work receives copyright protection for only the material contributed by him).

"If a copyright owner seeks to register a derivative work, the work upon which it is based must be noted on the registration form."  *The DBT Group v. FMC Corp.*, No. 01-C-2769, 2001 WL 1105077, at *2 (N.D. Ill. Sept. 19, 2001).  The Ninth Circuit has held that an infringement action may be barred if there is a knowing misrepresentation in a copyright registration.  *See Cooling Systers and Flexibles, Inc. v. Stuart Radiator, Inc.*, 777 F.2d 485, 488 (9th Cir. 1985) (overruled on other grounds); *Urantia Found. v. Maaherra*, 114 F.3d 955, 963 (9th Cir. 1997); *see also DeliverMed Holdings, LLC v. Schaltenbrand*, 734 F.3d 616, 622 (7th Cir. 2013) ("To prevent plaintiffs from abusing the registration process..., the Copyright Act allows for the invalidation of registrations obtained by knowing misrepresentations of material facts.").  However, "a showing of fraud is not required when the inaccurate information was knowingly included on the application, as opposed to being an inadvertent mistake." *Gold Value Int'l Textile, Inc. v. Sanctuary Clothing, LLC*, No. LA CV16-00339, 2017 WL 2903180, at *10 (C.D. Cal. Mar. 24, 2017).

On August 4, 2017, Plaintiff registered the 9/14/16 Script with the United States Copyright Office claiming ownership of the 9/14/16 Script.  (SUF 50.)  However, under the section of the Certificate of Registration entitled "Limitation of copyright right claim," Plaintiff **only** excluded material from the Book, but did **not** exclude any prior versions of the script prepared by Messrs. Boorman and

Kormanicki or the 1/25/15 Script, even though Plaintiff does not and cannot claim to own those prior scripts.  (SUF 21, 53.)  As such, the Copyright Registration was fundamentally inaccurate based upon Plaintiff's knowing failure to disclose that the prior scripts were excluded from his claim of ownership.

Plaintiff not only misrepresented the scope of his potential ownership to the Copyright Office, but his claim for copyright infringement in this case likewise claims ownership of the entire 9/14/16 Script, not just the changes in the 9/14/16 Script from prior versions.  (ECF No. 1, ¶ 27 ("Mr. Safinia owns the copyright in the Screenplay, which is an original work of authorship that is fixed in tangible media of expression.  Thus, Mr. Safinia holds **all rights to any and all derivative works** from the Screenplay.") (Emphasis added).

As such, Plaintiff's copyright infringement claim fundamentally fails as a matter of law because (1) Plaintiff is attempting to base his claim on an inaccurate copyright registration, which contains a knowing misrepresentation; and (2) Plaintiff's assertion that he is the sole owner of the entire 9/14/16 Script fundamentally fails as a matter of law.

### C.    Plaintiff cannot sue the Joint Authors of the 9/14/16 Script for copyright infringement.

"A 'joint work' is a work prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole."  17 U.S.C. § 101(a).  It is black letter law that a joint author may exploit a copyrighted work without the consent of the other coauthors.  *Richmond v. Weiner*, 353 F.2d 41, 46 (9th Cir. 1965).  "A co-owner of a copyright cannot be liable to another co-owner for infringement of the copyright.  Rather, each co-owner has an independent right to use or license the use of the copyright." *Oddo v. Ries*, 743 F.2d 630, 632-22 (9th Cir. 1984) (internal citations omitted).

/ / /

/ / /

EISNER

9601 WILSHIRE BOULEVARD, 7TH FLOOR
BEVERLY HILLS, CALIFORNIA  90210

1    For the reasons stated above, Plaintiff should have no claim to ownership in
2    the 9/14/16 Script.  However, assuming arguendo that Plaintiff did somehow have
3    an ownership interest (he does not), Plaintiff is only a "joint author" of the 9/14/16
4    Script, **not the sole author**.  The 9/14/16 Script is simply a **revised version** of prior
5    scripts **that he does not own**.  Plaintiff clearly intended to merge his changes into
6    the prior scripts and they now form a single script.  Definition is the owner and
7    "author" of these prior scripts pursuant to the Airborne Quitclaim, and is entitled to
8    exploit the 9/14/16 Script, including by granting licenses to the Defendants.  *See*
9    *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1146 (9th Cir. 2008); *Oddo*,
10   743 F.2d at 633.  Accordingly, Plaintiff cannot sue his joint author for copyright
11   infringement and the claim must be dismissed on these grounds.

12   **D.    Defendants have an implied license to utilize the 9/14/16 Script.**

13   Moreover, Defendants clearly had an implied license to exploit the 9/14/16
14   Script.  *See Effects Assocs., Inc. v. Cohen*, 908 F.2d 555, 559 (9th Cir. 1990).  An
15   implied license exists where: (1) the hiring party requests that the hired party create
16   a work; (2) the hired party creates and delivers the work to the hiring party; and (3)
17   the hired party intends that the hiring party use the work in a particular way.  *Asset*
18   *Marketing Systems, Inc. v. Gagnon*, 542 F.3d 748, 754-57 (9th Cir. 2008); *see also*
19   *Effects*, 908 F.2d at 558–59; Model Civ. Jury Instr. 9th Cir. 17.25 (2018) ("In order
20   to show the existence of an implied license, the defendant has the burden of proving
21   that: 1. the defendant requested that the plaintiff create a work; 2. the plaintiff made
22   that particular work and delivered it to the defendant; and 3. the plaintiff intended
23   that the defendant [copy] [distribute] [use] [modify] [retain] the plaintiff's work.")

24   In *Effects*, the plaintiff created special effects footage for the defendant's
25   motion picture. The defendant was dissatisfied with the plaintiff's work and only
26   paid him half the contract price.  908 F.2d at 555-556. The defendant used the
27   special effects in the final production, without first obtaining a written license or
28   assignment of the copyright.  *Id.*  The Ninth Circuit affirmed the district court's

E I S N E R

9601 WILSHIRE BOULEVARD, 7TH FLOOR
BEVERLY HILLS, CALIFORNIA  90210

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1   ruling that the effects company granted the plaintiff an implied non-exclusive
2   license to use the footage, inferred from the conduct of the parties—the effects
3   company created special effects at the defendant's request, and was paid for its
4   efforts.  *Id.* at 558-559.

5         In *Gagnon*, a marketing company hired a software developer as an
6   independent contractor.  542 F.3d 748, 750.  The parties failed to meaningfully
7   reduce their business relationship to writing, but the company ultimately paid the
8   developer significant sums over the course of four years to develop and maintain six
9   software programs.  *Id.*  After the parties terminated their relationship, the developer
10  contended that the company committed copyright infringement because it continued
11  to retain and modify his software programs without consent.  *Id.*  The Ninth Circuit
12  affirmed the district court and found for the company.  *Id.* at 758.  The developer's
13  delivery of the software included a grant of an unlimited, non-exclusive, implied
14  license to use, modify, and retain the source code of the programs in the absence of
15  written agreements to the contrary.  *See id.* at 757.

16        Here, "every objective fact concerning the transaction at issue supports a
17  finding that an implied license existed."  *Effects*, 908 F.3d at 558 n.6 (internal
18  citations omitted).  Plaintiff signed a contract to "render writing services in
19  connection with the pre-existing script entitled 'The Professor and the Madman'
20  based on the book of the same name (the 'Project')."  (SUF 11.)  Plaintiff wrote a
21  "screenplay adaption of the Mr. Winchester's book," The Professor and the
22  Madman.  (ECF No. 6-2, ¶¶ 3-4.)  Plaintiff made revisions to the screenplay based
23  on the requests of the Defendants.  (SUF 29-31.)  Plaintiff then "provided
24  Defendants a copy of the [9/14/16 Script]. With that screenplay in hand, Defendants
25  and [Plaintiff] worked together to shoot scenes for a film."  (ECF No. 6-2, ¶ 7.)

26        Plaintiff was paid the sum of $17,818 by the production for his writing
27  "polish" of the script.  (SUF 48.)  Plaintiff's expenses were fully paid by the
28  production for his work in Ireland, totaling the sum of $56,816, consisting of the

E I S N E R

9601 WILSHIRE BOULEVARD, 7TH FLOOR
BEVERLY HILLS, CALIFORNIA  90210

following expenses: Airfare - $8,875; Airport pickups - $793; Assistant/driver - $21,101; Accommodations - $18,328; Trailer - $3,070; Per diem expenses - $4,649. (SUF 47). Defendants funded production of the scripts into the Picture. These circumstances clearly demonstrate that Defendants had an implied license to utilize the 9/14/16 Script.

With the grant of an implied license, Plaintiff waives the right to sue for copyright infringement. *I.A.E., Inc. v. Shaver,* 74 F.3d 768, 775 (7th Cir. 1996) (*citing Effects Assocs.*, 908 F.2d at 559) ("[P]erson holding a nonexclusive license has no standing to sue for copyright infringement,…the existence of a license, exclusive or nonexclusive, creates an affirmative defense to a claim of copyright infringement.").

### E.   There Is No Evidence that Any of the Defendants Copied the 9/14/16 Script

To prove copyright infringement, a plaintiff must show: "(1) ownership of a valid copyright and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). "Absent direct evidence of copying, proof of infringement involves fact-based showings that the defendant had 'access' to the plaintiff's work and that the two works are 'substantially similar.' " *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 481 (9th Cir. 2000) (citation omitted).

"[A plaintiff] must prove both substantial similarity under the 'extrinsic test' and substantial similarity under the 'intrinsic test.' The 'extrinsic test' is an objective comparison of specific expressive elements. The 'intrinsic test' is a subjective comparison that focuses on whether the ordinary, reasonable audience would find the works substantially similar in the total concept and feel of the works." *Antonick v. Elec. Arts, Inc.*, 841 F.3d 1062, 1065-66 (9th Cir. 2016).

/ / /

/ / /

EISNER
9601 WILSHIRE BOULEVARD, 7TH FLOOR
BEVERLY HILLS, CALIFORNIA  90210

In *Antonick*, the plaintiff never introduced the alleged infringing work into evidence, so a side-by-side comparison of substantial similarity was impossible. 841 F.3d at 1066. The court held that the plaintiff's copyright claim was properly dismissed because it could not be determined whether the copyrighted work was substantially similar to the infringing work. *Id.*

The court reached the same result in *Seiler v. Lucasfilm, Ltd.*, holding that the plaintiff could not show infringement because "[t]here [could] be no proof of . . . copyright infringement unless [the plaintiff's] works [were] juxtaposed with [the defendant's] and their contents compared." 808 F.2d 1316, 1319 (9th Cir. 1986).

As discussed above, Plaintiff's copyright infringement claim fails because he does not own a valid copyright in the 9/14/16 Script. But even if Plaintiff could show that he owns a valid copyright, his claim still fails because Plaintiff never requested a copy of the allegedly infringing work in discovery and does not have a copy. Thus, Plaintiff has no evidence that the Defendants "copied" any supposedly original elements of the 9/14/16 Script into the Picture because Plaintiff does not have a copy of the Picture to compare to the 9/14/16 Script.

Moreover, even if Plaintiff somehow had a copy of the Picture, Plaintiff has no evidence that any of the named Defendants copied anything original from the 9/14/16 Script into a motion picture. Such evidence is simply not in the record.

Accordingly, Plaintiff cannot satisfy the second required element of establishing copyright infringement – that any of the Defendants copied the 9/14/16 Script and his claim should be dismissed on this basis alone.

## V.   CONCLUSION

In sum, Plaintiff Farhad Safinia's Claim for Copyright Infringement should be dismissed on the grounds that he has no standing to assert such a claim because the Certificate of Authorship he signed clearly and unambiguously provides that he would have no ownership interest in any screenplays he prepared in connection with the "Professor and the Madman." In addition, and even if the Certificate of

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

EISNER
9601 WILSHIRE BOULEVARD, 7TH FLOOR
BEVERLY HILLS, CALIFORNIA 90210

1  Authorship somehow did not apply to bar Plaintiff's claim, Plaintiff's claim should

2  be dismissed because: (1) there is no independent copyright in the 9/14/16 Script

3  because it fails to meet the criteria for independent copyright protection in a

4  derivative work; (2) Plaintiff is improperly asserting that he is the sole owner of the

5  entire 9/14/16 Script, not just the very minor changes he made from prior scripts

6  which he does not own; (3) Plaintiff cannot sue his joint author for copyright

7  infringement as a matter of law; (4) Defendants had an implied license to exploit the

8  9/14/16 Script; and (5) Plaintiff has no evidence that the Defendants "copied" any

9  part of the 9/14/16 Script in the Picture.

11  DATED:  October 16, 2018          EISNER, APC

13                                        By:  ___*/s/ Jeremiah T. Reynolds*___
14                                              Jeremiah T. Reynolds
15                                              Ryan D. Austin
16                                              Attorneys for Defendants, Counter-
                                               Claimants and Third-Party Plaintiffs
17                                              Voltage Pictures, LLC, Voltage
                                               Productions, LLC, Christchurch
18                                              Productions DAC, Nicolas Chartier, and
                                               Definition Films DAC

E I S N E R

9601 WILSHIRE BOULEVARD, 7TH FLOOR
BEVERLY HILLS, CALIFORNIA  90210

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT