QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Jeffery D. McFarland (Bar No. 157628)
  jeffmcfarland@quinnemanuel.com
  Shahin Rezvani (Bar No. 199614)
  shahinrezvani@quinnemanuel.com
  Aaron Perahia (Bar No. 304554)
  aaronperahia@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:   (213) 443 3000
Facsimile:    (213) 443 3100

Attorneys for Plaintiff and Counterclaim
Defendant Farhad Safinia

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| FARHAD SAFINIA, an individual,<br><br>    Plaintiff,<br><br>    vs.<br><br>VOLTAGE PICTURES, LLC, a California limited liability company; VOLTAGE PRODUCTIONS, LLC, a Nevada limited liability company; CHRISTCHURCH PRODUCTIONS DAC, an Ireland designated activity company; NICOLAS CHARTIER, an individual; and DOES 1 through 100, inclusive,<br><br>    Defendants.<br><br>RELATED COUNTER-CLAIMS. | Case No. 2:17-cv-06902-CBM-RAO<br>Assigned to: Hon. Consuelo B. Marshall<br><br>**PLAINTIFF FARHAD SAFINIA'S:**<br>1) **NOTICE OF MOTION AND MOTION *IN LIMINE* NO. 4 TO EXCLUDE EVIDENCE OF PRE-LITIGATION COMMUNICATIONS IN ANTICIPATION OF THIS ACTION;**<br>2) **MEMORANDUM OF POINTS AND AUTHORITIES; AND**<br>3) **DECLARATION OF AARON PERAHIA**<br><br>Date:      April 16, 2019<br>Time:     2:30 p.m,<br>Place:    Courtroom 8B<br>Judge:   Hon. Consuelo B. Marshall<br><br>Pre-trial conference: April 16, 2019<br>Trial date:                April 30, 2019 |

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that, on April 16, 2019, at 2:30 p.m., before the Honorable Consuelo B. Marshall in Courtroom 8B of the United States District Court for the Central District of California, located at 350 West First Street in Los Angeles, California, Plaintiff and Counterclaim Defendant Farhad Safinia will, and hereby does, move the above-entitled Court for an order precluding Defendants, Counter-Claimants, and Third-Party Plaintiff Voltage Pictures, LLC, Voltage Productions, LLC, Christchurch Productions DAC, Nicolas Chartier, and Definition Films DAC (collectively, "Defendants"), and their respective counsel and witnesses, from introducing any evidence or argument concerning, or any making reference to, Mr. Safinia's pre-litigation communications that are protected by California's litigation privilege, including:

1.   Mr. Safinia's communications with Mel Gibson, Bruce Davey, and/or Vicki Christianson about filing this action; and

2.   Mr. Safinia's communications concerning his claims of ownership of, and his application and registration of the copyright in, his 2016 Screenplay.

Mr. Safinia brings the Motion pursuant to *Federal Rules of Evidence* 401, 402, and 403 on the ground that Mr. Safinia's pre-litigation communications are protected by California's litigation privilege, and thus they cannot form the basis of Mr. Safinia's liability; as a result, evidence of such communications does not tend to show any fact that is of consequence in the action, and it is therefore irrelevant.  Mr. Safinia also brings the Motion on the ground that, even if such evidence were marginally relevant, the probative value of such evidence would be substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, unduly delaying the proceeding, and wasting time.

Mr. Safinia bases the Motion upon  this Notice of Motion and Motion; the attached Memorandum of Points and Authorities; the attached Declaration of Aaron Perahia in Support of Motion *in Limine* No. 4 ("Perahia Decl."); all pleadings and

-1-
SAFINIA'S (1) MOT. *IN LIMINE* NO. 4 TO EXCLUDE PRE-LITIGATION
COMMUNICATIONS;  (2) M P&A; AND (3) PERAHIA DECL.

papers on file in this action; such other evidence or arguments as may be presented to the Court; and such other matters of which this Court may take judicial notice.

      Mr. Safinia makes the Motion following the conference of counsel pursuant to Local Rule 7-3, which took place on March 12, 2019. Perahia Decl. ¶2.

DATED: March 19, 2019
        QUINN EMANUEL URQUHART & SULLIVAN. LLP

        By   /s/ Jeffery D. McFarland
            Jeffery D. McFarland
            Shahin Rezvani
            Aaron Perahia
            *Attorneys for Plaintiff and Counterclaim Defendant Farhad Safinia*

# MEMORANDUM OF POINTS AND AUTHORITIES

## Introduction

Defendants have made it clear they intend to make Mr. Safinia's alleged acts leading up to this lawsuit a central aspect of their case. According to Defendants, Mr. Safinia tortuously interfered by "conspiring" with affiliates of Icon Productions, LLC ("Icon") to "commit fraud against the Copyright Office by illegally registering a copyright" in order to bring this action. ECF No. 67 ¶39. Not only are those claims patently false; they are also precisely the type of claims forbidden by California's litigation privilege. The litigation privilege confers *absolute* immunity from liability for pre-litigation communications related to an anticipated lawsuit.

The privilege thus protects Mr. Safinia's communications with Icon affiliates, including Mel Gibson, Bruce Davey, and Ms. Christianson, about initiating this action. It also protects Mr. Safinia's communications claiming ownership of the 2016 Screenplay and registering it for copyright protection. Because such evidence is protected, it cannot form the basis of Mr. Safinia's liability. It is thus irrelevant and inadmissible, as it does not tend to show any fact that is of consequence in the action. Because it is inadmissible, the Court should preclude Defendants from making any reference to it at trial.

## Argument

### I. MR. SAFINIA'S PRE-LITIGATION COMMUNICATIONS ARE INADMISSIBLE.

California's litigation privilege protects communications made in connection with litigation, including pre-litigation communications. *Cal. Civ. Code* § 47(b); *see Aronson v. Kinsella*, 58 Cal. App. 4th 254, 262 (1997). The litigation privilege attaches to any communication "(1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." *Silberg v. Anderson*, 50 Cal. 3d 205, 212 (1990).

"The litigation privilege is absolute." *Herterich v. Peltner*, 20 Cal. App. 5th 1132, 1139 (2018).  It applies "regardless whether the communication was made with malice or the intent to harm," and "application of the privilege does not depend on the publisher's 'motives, morals, ethics or intent." *Id.*  The privilege provides "absolute immunity from tort liability" as well as "breach of contract cases," arising from "communications with 'some relation' to judicial proceedings." *Feldman v. 1100 Park Lane Assocs.*, 160 Cal. App. 4th 1467, 1494 (2008).

The "principal purpose of section 47 ([b]) is to afford litigants . . . the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions." *Silberg*, 50 Cal. 3d at 213.  Any doubts as to whether the privilege applies are resolved in favor of applying it. *Adams v. Superior Court*, 2 Cal. App. 4th 521, 529 (1992); *see also Sacramento Brewing Co., v. Desmond, Miller & Desmond et al.*, 75 Cal. App. 4th 1082, 1088-89 (1999) ("[T]he privilege should be denied only where it is so palpably irrelevant to the subject matter of the action that no reasonable person can doubt it irrelevancy.").

The privilege extends beyond the courthouse, covering all "communications that have some relation to an anticipated proceeding." *Herterich*, 20 Cal. App. 5th at 1139; *see Hagberg v. California Federal Bank*, 32 Cal. 4th 350, 361 (2004) ("preliminary conversations and interviews related to contemplated action" are privileged even without direct connection to any judicial process); *Knoell v. Petrovich*, 76 Cal. App. 4th 164, 171 (1999) (communication "was in contemplation of litigation"); *Rubin v. Green*, 4 Cal. 4th 1187, 1194-5 (1993) (pre-litigation conduct is generally privileged); *Lerette v. Dean Witter Org., Inc.*, 60 Cal. App. 3d 573, 577-78 (1976) (litigation privilege applies to pre-litigation communications).

## II. MR. SAFINIA'S COMMUNICATIONS WITH ICON AFFILIATES ABOUT BRINGING A LAWSUIT ARE INADMISSIBLE.

The litigation privilege plainly protects Mr. Safinia's pre-litigation communications with affiliates of Icon, including Messrs. Gibson and Davey and

Ms. Christianson, about initiating this action. Both Mr. Safinia and Icon were intimately involved in the production of the picture, and when it became clear the dispute with Defendants could not be resolved by other means, Mr. Safinia communicated with Icon affiliates as part of his serious evaluation of whether to sue Defendants as a means to resolve the dispute. *See, e.g.*, Perahia Decl., Exh. A. Those communications concerned the subject matter of this litigation, and they were made in anticipation of this litigation in order to advance its goals. *See, e.g. id.* And, the fact that Mr. Safinia ultimately brought this litigation further confirms that the communications were in furtherance of this litigation. The litigation privilege thus confers "absolute" protection over the communication.

The litigation privilege functions not as a mere evidentiary privilege, but instead as a complete bar to any liability based on protected communications. As a result, Defendants may not seek to hold Mr. Safinia liable based on any protected communications. Here, Defendants seek to introduce Mr. Safinia's pre-litigation communications with Icon affiliates to suggest they wrongfully conspired to bring this suit, thereby interfering with Defendants' prospective economic relations. ECF No. 67 at ¶69. In other words, they want to hold Mr. Safinia liable based on his protected communications. That is precisely what the litigation privilege forbids. Evidence of such communications, therefore, is irrelevant to Defendants' claims, as it does not make any fact *of consequence* more or less probable. *Fed. R. Evid.* 401. Nor is there any other reason to admit this evidence. Indeed, because Mr. Safinia's communications are protected by law, Defendants may not be use this evidence to mislead the jury into believing that Mr. Safinia did something wrong by his communications. This is precisely the kind of evidence that Rule 403 is intended to exclude.

Accordingly, the Court should exclude all evidence of Mr. Safinia's protected pre-litigation communications with Icon affiliates (including Messrs. Gibson and Davey and Ms. Christianson) about the initiating of this action. *See Lite On It Corp.*

*v. Toshiba Corp.*, 2009 WL 10673990, at *1 (C.D. Cal. Mar. 2, 2009) (granting motion *in limine* excluding communications protected by litigation privilege).

### III. MR. SAFINIA'S COMMUNICATIONS CLAIMING OWNERSHIP OF HIS 2016 SCREENPLAY AND REGISTERING HIS COPYRIGHT ARE INADMISSIBLE.

The litigation privilege also shields Mr. Safinia's communications registering his 2016 Screenplay and claiming ownership of it. Because only an owner of a registered copyright may sue for infringement, ownership and registration are "jurisdictional prerequisite[s]" to bringing an infringement suit. *Nestle USA, Inc. v. Virtual Integration Tech.*, 2000 WL 727859, at *3 (C.D. Cal. May 17, 2000); *see Silvers v. Sony Pictures Entm't, Inc.*, 402 F.3d 881, 884 (9th Cir. 2005) (only owner of copyright may sue for infringement). Therefore, pre-litigation communications to satisfy those requirements (*i.e.*, claiming ownership of a work and registering it for copyright protection) are necessarily "related to and in further of an anticipated infringement action." *Nestle.*, 2000 WL 727859, at *3.

*Nestle* could not be more apt. After a dispute arose regarding ownership of an unregistered computer program, the plaintiff registered the program and sued the defendant for infringement. *Id.* at *1. The defendant counterclaimed for tortious interference, alleging the plaintiff lied on the copyright application and wrongfully claimed ownership of the program, thereby preventing the defendant from selling it to other customers. *Id.* at *1-2. In response, the plaintiff argued "its copyright application is absolutely privileged," and the court agreed. *Id.* at *3. The court explained that "a copyright application is a necessary prerequisite" to suit, and thus, "applying the litigation privilege to a copyright application is necessary to protect access to the judicial system." *Id.* Because the "copyright application is absolutely privileged as a communication made in a judicial proceeding," the court held the defendant could support its interference claim by evidence of the "copyright registration application or the statements therein." *Id.* at *4.

As in *Nestle*, Mr. Safinia's copyright application and registration is protected by the litigation privilege. Mr. Safinia's registration of his screenplay was necessary to bring this suit. Moreover, he registered the copyright in anticipation of this action, as evidence by the fact that he filed suit just 15 days after registering the screenplay, and it was done on his behalf by his litigation counsel here. *See* ECF No. 1 at 15; ECF No. 67 at ¶38; *see also Nestle*, 2000 WL 727859, at *3 (short time period between registration and suit, and representation by same counsel, bolsters showing that application was in furtherance of litigation). The same holds true for Mr. Safinia's statement that he owns his screenplay: he could not have registered his copyright if he did not say so. Accordingly, the litigation privilege confers *absolute* protection on Mr. Safinia against any claims based on his claiming of ownership of the 2016 Screenplay or his copyright application and registration of the screenplay. Such evidence is therefore inadmissible, and it should be excluded. *See Lite On It Corp.*, 2009 WL 10673990, at *1 (granting motion *in limine* excluding protected communications).

## Conclusion

For the foregoing reasons, the Court should grant this motion and preclude Defendants, as well as their counsel and witnesses, from introducing any evidence or argument concerning, or making any reference to, any pre-litigation communications that are protected by the litigation privilege, including:

1. Mr. Safinia's pre-litigation communications with Icon affiliates, including Messrs. Gibson and Davey and Ms. Christianson, about the filing of litigation; and

2. Mr. Safinia's pre-litigation communications in connection with his claiming ownership of, and application and registration of the copyright in, his 2016 Screenplay.

DATED: March 19, 2019

QUINN EMANUEL URQUHART & SULLIVAN. LLP

By  */s/ Jeffery D. McFarland*
Jeffery D. McFarland
Shahin Rezvani
Aaron Perahia
*Attorneys for Plaintiff and Counter-Claim Defendant Farhad Safinia*

# DECLARATION OF AARON PERAHIA

I, Aaron Perahia, say that:

1. I am a member of the bar of the State of California, and I am admitted to practice before this Court. I am an associate at Quinn Emanuel Urquhart & Sullivan, LLP, and I am counsel for Plaintiff and Counterclaim Defendant Farhad Safinia. I make this declaration in support of Mr. Safinia's Motion *in Limine* No. 4 to Exclude Evidence of Pre-Litigation Communications in Anticipation of this Action (the "Motion"). I make this declaration of personal, firsthand knowledge, and if called and sworn as a witness, I could and would testify competently thereto.

2. On March 12, 2019, counsel for the parties engaged in a conference of counsel to meet and confer regarding the respective motions *in limine* the parties intended to file. During the conference, Jeffery McFarland and Shahin Rezvani informed Jeremiah Reynolds and Ashlee Lin, counsel for Voltage Pictures, LLC, Voltage Productions, LLC, Christchurch Productions DAC, Nicolas Chartier, and Definition Films DAC, of the substance and basis of Mr. Safinia's contemplated Motion. The parties were unable to reach a resolution with respect to the Motion.

3. Attached hereto as **Exhibit A** is a true and correct copy of a document that was marked as Exhibit 82 at Mr. Safinia's deposition taken in this action on August 20, 2018. The document reflects an e-mail from Mr. Safinia to Bruce Davey on February 2, 2017, which Mr. Safinia forwarded to Vicki Christianson that same day.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

Executed March 19, 2019, at Los Angeles, California.

Aaron Perahia

# EXHIBIT A

Subj:   Fwd:
Date:   2/2/2017 10:55:30 P.M. Pacific Standard Time
From:   fsafinia@gmail.com
To:     lasubway@aol.com

Sent from my phone

Begin forwarded message:

From: Farhad Safinia <fsafinia@gmail.com>
Date: February 2, 2017 at 10:49:09 PM PST
To: Bruce Davey <bd@multitaskint.com>

Hi Bruce. I got your message. I've lost my voice entirely. And spent the night explaining things to Laura which hasn't been easy. So I think we should catch up some other time.

Vicki made a very valiant effort to put a brave face on the whole thing. And Mel came in and was very supportive as usual, wanting to really get back at voltage. He acknowledges though that the film is probably going to get permanently shelved. His most optimistic view being that maybe some time in the future we may be able to reconvene everyone but chances are slim. All he's really focused on now is to hit voltage. And hitting voltage at this stage is separate from the fortunes of the film.

And that brings me to the main crux of things. I strongly believe that the response from voltage come screening time will be that the assembly is too long, that they want to take the film in house and cut it down before they "finally" "truly" decide what if anything needs to be done. And that process can and will take months if not more.

And the same group of agents and lawyers who all caved today will absolutely do the same thing at that time because it's the path of least resistance.

I was never convinced that our threat to go legal, even if we had seen it through today, would make voltage change their minds and do right by the film. But it was a last shot of sorts.

So the consequence of today is that we have accepted that a potential shoot in Oxford in March is also definitely off the cards. Which means if I am to consider continuing to commit and work on this film it is for at least another 6-9 months, and that's on the impossible chance that voltage decides to do anything and do it right. Otherwise, there's no point. But I don't have that 6-9 more months in me with this guy, especially with nothing to hold on to to say that the film has a chance to come out right. The other thing we know is that nick is going to "fire" me upon viewing the assembly. I know I have no contract with him etc. I'm just describing what he's going to do based on his view of the world and what he repeatedly claimed today to everyone, our editor, my own agent etc. So I'd be working now, to get "fired" in two weeks. Seems pointless.

I asked my lawyer and he said that the position about my rights to the material can be exploited if we all like, regardless of whether I stay on or not. It doesn't affect anything.

I honestly can't see the reason to continue work on something for which the best outcome now is that it gets shelved and we get to maybe hit Chartier legally to prevent its release. Besides which, as you said to me before, no one really has the appetite for drawn out legal battles. I agreed with you then and still do so now. It's obvious that voltage's way is to throw the biggest tantrum in the room and everyone caves to that. He's done it all the way along and it has worked for him every time. I believe that's how it will be going forward on every remaining issue including after post.

This is where I am at now. I asked my lawyer and agent to contact tom and explain some of this from their point of view so we are all still on the same page on our side. And I'm due to talk to them more tomorrow. But I wanted to let you know myself where things are with me.


EXHIBIT 82
8-20-18
Safinia

Friday, February 03, 2017 AOL: LAsubway

**EXHIBIT A**

ICON006762
82

I will be going into Icon tomorrow, but I can't see how it makes a difference to go on after that.

F.

Sent from my phone

**EXHIBIT A**

ICON006763