UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FARHAD SAFINIA,<br><br>　　Plaintiff and Counter-Claim Defendant,<br><br>v.<br><br>VOLTAGE PICTURES, LLC, *et al.*,<br><br>　　Defendants and Counter-Claim Plaintiffs. | Case No.:  CV 17-6902-CBM-RAO<br><br>**ORDER RE:  DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; AND PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON DEFENDANTS' LIABILITY FOR COPYRIGHT INFRINGEMENT** |

　　The matters before the Court are:  (1) Defendants Voltage Pictures, LLC, Voltage Productions, LLC, Christchurch Productions DAC, Nicolas Chartier, and Definition Films DAC's (collectively, "Defendants'") Motion for Summary Judgment (Dkt. No. 129); and (2) Plaintiff's Motion for Partial Summary Judgment on Defendants' Liability for Copyright Infringement (Dkt. No. 161).[1]

## I.　BACKGROUND

　　This lawsuit arises from Defendants' alleged infringement of Plaintiff

---

[1] The Court's rulings re: the parties' evidentiary objections (Dkt. Nos. 134-2, 143-1, 164-6) are set forth in a separate order.

Farhad Safinia's ("Plaintiff's" or "Safinia's") screenplay, *The Professor and the Madman* (the "Screenplay").[2] Plaintiff's complaint asserts two causes of action against Defendants: (1) copyright infringement, 17 U.S.C. §§ 106 *et seq*.; and (2) defamation (libel) per se, Cal. Civ. Code §§ 45, 45a. (Dkt. No. 1.) On December 7, 2017, the Court dismissed Plaintiff's defamation claim without prejudice to refiling in a court with proper jurisdiction upon finding the defamation claim was not part of the same case or controversy as Plaintiff's copyright claim because it does not derive from a common nucleus of operative fact. (Dkt. No. 41.) Defendants move for summary judgment on Plaintiff's copyright infringement claim. Plaintiff moves for partial summary judgment on the issue of Defendants' liability for copyright infringement.[3]

## II. LEGAL STANDARD

### A. Summary Judgment

On a motion for summary judgment, the Court must determine whether, viewing the evidence in the light most favorable to the nonmoving party, there are any genuine issues of material fact. *Simo v. Union of Needletrades, Indus. & Textile Employees*, 322 F.3d 602, 609-10 (9th Cir. 2003); Fed. R. Civ. P. 56. Summary judgment against a party is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

---

[2] It is undisputed that: (1) on July 27, 2016, Defendant Voltage's President Zev Foreman sent an email to Plaintiff with the subject line: "Script" wherein Foreman wrote: "We really need you to condense roles/scenes now. The current cost for your current script is 50 days. We need it to be 40. So I think it would make sense to get started."; and (2) Plaintiff completed the rewrite/revised version of the script on September 14, 2016. This 2016 "script" is the Screenplay copyrighted by Plaintiff which is basis of Plaintiff's copyright infringement claim against Defendants. Prior versions/revisions of scripts re: the Novel are not the subject of this lawsuit.

[3] Defendants filed Counterclaims and a Third-Party Complaint (Dkt. No. 42), and the Court previously dismissed without prejudice certain counterclaims (Dkt. No. 76). Defendants' remaining counterclaims for declaratory judgment, breach of contract, and intentional interference with prospective economic relation, are not the subject of the parties' instant motions.

moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "material" only if it might affect the outcome of the suit under governing law. *Id.* The evidence presented by the parties must be admissible. Fed. R. Civ. P. 56(e). In judging evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Rather, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [the nonmovant's] favor." *Anderson*, 477 U.S. at 255. But the non-moving party must come forward with more than "the mere existence of a scintilla of evidence." *Id.* at 252. "Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (citations omitted).

**B. Copyright Infringement**

"To establish a successful copyright infringement claim, a plaintiff must show that he . . . owns the copyright and that defendant[s] copied protected elements of the work." *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002). The plaintiff is also "required to show registration as an element of an infringement claim." *Unicolors, Inc. v. Urban Outfitters, Inc.*, 853 F.3d 980, 988 (9th Cir. 2017); *see also Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*, --- S.Ct. ----, 2019 WL 1005829, at *3 (U.S. Mar. 4, 2019) ("Registration" of a copyright "is akin to an administrative exhaustion requirement that the owner must satisfy before suing to enforce ownership rights."). "A certificate of registration from the U.S. Copyright Office raises the presumption of copyright validity and ownership." *Unicolors, Inc.*, 853 F.3d at 822. However, "[t]he

3

1  presumptive validity of the certificate may be rebutted and defeated on summary
2  judgment." *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1086 (9th Cir. 1989).
3       "Copyright in a work protected under [the Copyright Act] vests initially in
4  the author or authors of the work." 17 U.S.C. § 201(a). However, "[i]n the case
5  of a work made for hire, the employer or other person for whom the work was
6  prepared is considered the author . . . , and, unless the parties have expressly
7  agreed otherwise in a written instrument signed by them, owns all of the rights
8  comprised in the copyright." 17 U.S.C. § 201(b). A "work made for hire" is
9  defined as "(1) a work prepared by an employee within the scope of his or her
10 employment; or (2) a work specially ordered or commissioned for use ... as a part
11 of a motion picture or other audiovisual work, ... if the parties expressly agree in a
12 written instrument signed by them that the work shall be considered a work made
13 for hire." 17 U.S.C. § 101. Therefore, in "work made for hire" agreements, "the
14 employer or other person for whom the work was prepared is considered the
15 author . . . and . . . owns all the rights in the copyright." *Warren v. Fox Family
16 Worldwide, Inc.*, 328 F.3d 1136, 1140 (9th Cir. 2003) (citing 17 U.S.C. 201(b));
17 *see also Mostowfi v. i2 Telecom Int'l, Inc.*, 269 F. App'x 621, 623 (9th Cir. 2008)
18 ("The creator of a work made for hire does not have a legal or beneficial interest
19 in the copyright and therefore does not have standing to sue for infringement.").

### III. DISCUSSION

**A. Preliminary Matters**

Plaintiff's request that the Court deny or defer ruling on Defendants' Motion based on defense counsel's failure to disclose facts and evidence supporting Defendants' Motion during the conference of counsel pursuant to Local Rule 7-3 is denied. Local Rule 7-3 does not require the moving party to disclose all facts and evidence in support of its intended Motion.

Plaintiff's request that the Court deny or defer ruling on Defendants' Motion on the ground Defendants failed to meet and confer regarding a joint

4

statement of undisputed facts is denied. No summary judgment motion had been filed by Plaintiff at the time Plaintiff filed his opposition to Defendants' Motion, and therefore the parties were not required to file a joint statement of undisputed facts at that time.

**B.     Ownership**

Plaintiff provides evidence of a certificate of registration issued on August 4, 2017, for the Screenplay, which raises a rebuttable presumption regarding Plaintiff's ownership and the validity of the copyright. *See S.O.S., Inc*, 886 F.2d at 1085-86; *Unicolors*, 853 F.3d at 988.

Defendants, however, submit evidence demonstrating Plaintiff signed a Certificate of Authorship ("COA") on January 8, 2007, with Airborne Productions, Inc. ("Airborne"),[4] which states:

> I, Farhad Safinia, hereby certify that I have been engaged by Airborne Productions, Inc. ("Company") to render writing services in connection with the pre-existing script entitled 'The Professor and the Madman' based on the book of the same name (the "Project"). In connection therewith, I hereby represent, warrant and agree that (a) my services are rendered for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged; (b) the results and product of all such services, including, without limitation, ***all writings, notes, ideas, characters, situations, themes and plots I contribute*** in connection with the Project, (collectively, the "Work") ***are and will be deemed to have been specifically ordered or commissioned by Company*** for use as part of a motion picture or other audio visual work; (c) such results and product are and will be a ***"work made for hire"*** within the meaning of the United States Copyright Act; and (d) ***Company shall be deemed to be the author thereof and the owner of all rights therein and of all proceeds derived therefrom and in connection therewith, with the right to make such changes therein and such uses and disposition thereof,*** in whole or in part, as Company may from time to time determine as

---

[4] Airborne is not a party in this lawsuit. Airborne is an affiliate of Icon Productions, LLC, which held the rights to a 2001 screenplay re: the Novel and the rights to create the film re: the Novel.

the author and owner thereof.

(Emphasis added.) The language of the COA makes clear it applies to any writings by Plaintiff regarding the Film, including the Screenplay registered by Plaintiff which is the subject of this lawsuit.

Plaintiff argues the COA only covers work "specifically ordered or commissioned by [the] Company" (i.e., Airborne), and therefore does not cover the Screenplay which was requested by Defendant Voltage. The express language of the COA, however, states that "all writings, notes, ideas, characters, situations, themes and plots [Safinia] contribute[s] in connection with the Project" (defined as "writing services in connection with the pre-existing script entitled 'The Professor and the Madman' based on the book of the same name") ***are and will be deemed to have been specifically ordered or commissioned by Company.***" (Emphasis added.) Accordingly, the Court finds the Screenplay is a writing in connection with the pre-existing script and therefore is deemed to have been specifically ordered or commissioned by Airborne pursuant to the terms of the COA.

The fact that there is no COA between the named parties in this lawsuit is irrelevant to determining whether Plaintiff's Screenplay is a work for hire which Plaintiff does not own based on the COA between Plaintiff and Airborne. The COA provides that the "Company [i.e., Airborne] shall be deemed to be the author thereof and the owner of all rights therein" of the "writings, notes, ideas, characters, situations, themes and plots [Safinia] contribute[s] in connection with the Project." Accordingly, even if there is no COA between Plaintiff and Defendants, Plaintiff does not have ownership rights in the Screenplay based on the COA between Airborne and Plaintiff. *See* 17 U.S.C. § 201(b) ("In the case of a work made for hire, the employer or other person for whom the work was prepared is considered the author for purposes of this title, and, unless the parties have expressly agreed otherwise in a written instrument signed by them, owns all

of the rights comprised in the copyright.").

Notwithstanding the above, Defendants offer a Quitclaim Agreement dated August 21, 2016, signed by Airborne and Definition Films DAC, as evidence, which provides:

> WHEREAS, on or about January 78, 2007, Airborne engaged Farhad Safinia ("Safinia") to perform writing services in connection with a motion picture project entitled "The Professor And The Madman" (the "Picture"), and Safinia executed a Certificate of Authorship certifying he was engaged by Airborne "to render writing services in connection with the pre-existing script entitled 'The Professor and the Madman' based on a book of the same name" on a work for hire basis; . . . the parties hereto acknowledge and agree as follows: . . .
>
> Assignor [Airborne] hereby quitclaims and assigns unto Assignee [Definition Films DAC] all of Assignor's right, title and interest in and to Picture, including but not limited to . . . All literary material relating to the Picture including without limitation the "Literary Material" set forth in Exhibit "A" hereto, and all copyrights in connection therewith, and all tangible and intangible properties respecting the Picture (collectively, the "Literary Property"); and . . . All contracts, agreements, assignments and instruments of every kind and character under which Assignor has heretofore acquired any right, title or interest in or to the Picture, including without limitation, all documents enumerated in Exhibit "A" hereto (the "Underlying Documents").

Exhibit A to the Quitclaim Agreement defines: (1) "Literary Material" as "[a]ll rights in and to the book entitled 'The Professor and the Madman' written by Simon Winchester ('Winchester'), and all rights in and to *all drafts and versions of the screenplay* currently entitled 'The Professor And The Madman' written by Farhad Safinia ('Safinia') and/or any other writer (Based on the foregoing book) (collectively, the 'Literary Material')" (emphasis added); and (2) "Underlying Documents" as "Certificate of Authorship dated January 8, 2007, between Airborne Productions, Inc. ("Airborne") and Safinia wherein Safinia certifies that he was engaged by Airborne "to render writing services in connection with the

7

pre-existing script entitled 'The Professor and the Madman' based on a book of the same name" on a work for hire basis."[5] Therefore, Airborne's ownership rights to the Screenplay were transferred to Defendant Voltage under the Quitclaim Agreement. *See* 17 U.S.C. § 201(d).

Plaintiff argues the COA only applies to a single rewrite by Plaintiff in 2007 and that Plaintiff and Airborne "contemplated" and "understood" that the COA would not cover any of Plaintiff's future work after 2007 such as the Screenplay which was completed in 2016. Plaintiff declares:

> I began revising the 2001 screenplay after signing the COA. I spent months on the revisions and created several drafts along the way, but I finished my revisions by the time I left Icon[6] in 2009. Therefore, at that time, I understood that my engagement under the COA had terminated, that Airborne Productions, Inc. ("Airborne") owned the rights to the revisions I performed up to that time, and that the COA would not apply to anything I created in the future.

(Plaintiff's Decl. ¶ 3.) In addition, Vicki Christianson, the President of Airborne, declares: "On or about January 8, 2007, Farhad Safinia was engaged to revise the 2001 screenplay" for which Icon held the rights to create the Film, "[w]hen Airborne requested Mr. Safinia revise the 2001 screenplay and signed the COA with him, Airborne contemplated the COA would apply only to Mr. Safinia's

---

[5] Defendants also submit a copy of a Short Form Assignment & Quitclaim signed by Airborne dated August 21, 2016, which provides:

> The undersigned, AIRBORNE PRODUCTIONS, INC., (together, "Assignor"), do hereby assign and quitclaim unto DEFINITION FILMS, DAC ("Assignee") all of Assignor's right, title and interest in and to the book entitled "The Professor and the Madman" written by Simon Winchester, and all of Assignor's rights in and to the screenplay currently entitled "The Professor And The Madman" written by Farhad Safinia, and/or any other writer, and ***all drafts, versions, synapses, treatments, scenarios, screenplays, and all copyrights in connection herewith***. This Short Form Quitclaim is subject to all the terms, conditions, representations, and warranties of the Quitclaim Agreement between Assignor and Assignee dated August 21, 2016.

(Emphasis added.)

[6] Icon is an affiliate of Airborne, and is not a named party in this action.

8

2007 revision. Airborne did not contemplate the COA would cover any additional work performed by Mr. Safinia beyond his 2007 revision," at the time Mr. Safinia left Icon in 2009, he had completed his 2007 revision under the COA, and "[a]t the time, Airborne Understood that Mr. Safinia's engagement under the COA had terminated, that Airborne owned the revised screenplay and any drafted created by Mr. Safinia up to that time, and that any future work by Mr. Safinia would not be covered by the COA." (Christianson Decl. ¶ 3.)

The express language of the COA, however, does not limit its application to only a single rewrite in 2007, nor provide that the COA would not apply to future writings by Plaintiff after 2007. Therefore, the COA is not "reasonably susceptible" to the interpretation proffered by Plaintiff. *See* Cal. Civ. Code § 1638 ("The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity.");[7] *Parsons v. Bristol Dev. Co.*, 62 Cal. 2d 861, 865 (1965) ("Extrinsic evidence is admissible to interpret the instrument, but not to give it a meaning to which it is not reasonably susceptible.").

Moreover, the declarations submitted by Plaintiff regarding Airborne and Plaintiff's undisclosed subjective intent does not change the objective intent set forth in the language of the COA. *See* Cal. Civ. Code § 1639 ("When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible.").[8] Plaintiff fails to submit evidence demonstrating Airborne or Plaintiff's subjective intent was communicated before the COA was signed.[9]

---

[7] The parties reply on California law in interpreting the COA.

[8] *See also Foster-Gardner, Inc. v. Nat'l Union Fire Ins. Co.,* 18 Cal. 4th 857, 868 (1998) ("intent is to be inferred, if possible, solely from the written provisions of the contract"); *see also Okada v. Whitehead*, 2016 WL 9448482, at *7 (C.D. Cal. Nov. 4, 2016), *aff'd,* 2019 WL 92486 (9th Cir. Jan. 3, 2019) (citing *Titan Grp., Inc. v. Sonoma Valley Cty. Sanitation Dist.*, 211 Cal. Rptr. 62, 65 (Cal. Ct. App. 1985)); *Ben-Zvi v. Edmar Co.*, 47 Cal. Rptr. 2d 12, 14 (Cal. Ct. App. 1995).

[9] Plaintiff testified at his deposition that he could not recall if he asked any questions about the COA before he signed it, he does not remember exactly what Christianson said to him about the COA when he was asked to sign it, and he

9

Therefore, Airborne and Plaintiff's subjective intent is irrelevant to interpreting the express language of the COA.[10]

Plaintiff also submits evidence regarding Plaintiff's and Defendants' "pre-dispute conduct," and argues such evidence shows Defendants knew and believed the COA did not cover Plaintiff's Screenplay. However, none of the named defendants are a party to the COA, and therefore evidence regarding Defendants' conduct is irrelevant to determining the contracting parties' objective intent at the time the COA was executed. *Cf. People v. Shelton*, 37 Cal. 4th 759, 767 (2006) ("The mutual intention to which the courts give effect is determined by objective manifestations of the parties' intent, including . . . the ***subsequent conduct of the parties***.") (emphasis added).

Accordingly, the undisputed evidence demonstrates Plaintiff does not own rights in the Screenplay. Plaintiff therefore lacks standing for his copyright infringement claim against Defendants. *See* 17 U.S.C. § 501(b); *Silvers v. Sony Pictures Entm't, Inc.*, 402 F.3d 881, 883 (9th Cir. 2005); *Baker v. FirstCom Music*, 2018 WL 3583237, at *23 (C.D. Cal. Mar. 15, 2018), *modified*, 2018 WL 3617884 (C.D. Cal. Apr. 6, 2018).

///
///
///
///

---

cannot recall if there was anyone else he might have spoken to about the COA. (Plaintiff Depo. 54:10-16, 295:10-296:24.) Christianson testified at her deposition that she did not recall having any conversation with Plaintiff before they signed the COA. (Christianson Depo. 56-58.)

[10] The Court sustained Defendants' objections to Plaintiff's and Christianson's declarations regarding their subjective intent re: the COA as irrelevant. (*See* supra.) *See Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.*, 135 Cal. Rptr. 2d 505, 514 (Cal. Ct. App. 2003) ("The parties' undisclosed intent or understanding is irrelevant to contract interpretation."); *Winet v. Price*, 6 Cal. Rptr. 2d 554 (Cal. Ct. App. 1992) ("[T]he undisclosed subjective intent of the parties is irrelevant to determining the meaning of contractual language.").

## IV. CONCLUSION

Accordingly, the Court **GRANTS** Defendants' Motion for Summary Judgment on Plaintiff's copyright infringement claim; and **DENIES** Plaintiff's Motion for Partial Summary Judgment on Defendants' Liability for Copyright Infringement.

**IT IS SO ORDERED.**

DATED: March 20, 2019.

CONSUELO B. MARSHALL
UNITED STATES DISTRICT JUDGE